ORIGINAL

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS
OCT 15 2001
DAVID J. MALAND, CLERK
BY
DEPUTY

In Re:                                  §
                                        §
Triton Energy Limited Securities Litigation  §   Civil Action No. 598CV256
                                        §
                                        §
                                        §

## DEFENDANTS' OBJECTIONS TO AND MOTION TO STRIKE
## PLAINTIFFS' EXPERT AND BRIEF IN SUPPORT

Defendants Triton Energy Limited, Thomas G. Finck and Peter Rugg (collectively, the "Defendants") file these Objections to and Motion to Strike Plaintiffs' Expert and Brief in Support (hereinafter "Defendants' Motion") regarding Plaintiffs' proffer of Professor Geoffrey Miller to testify about the legal requirements regarding class certification, as follows:

### I.
### INTRODUCTION

As shown in the Defendants' Opposition to Plaintiffs' Supplemental Motion for Class Certification and in the Defendants' Sur-Reply in support of same, Plaintiffs have failed to meet their burden of establishing that they are adequate to serve as class representatives and that each of their claims and any defenses to them are typical of those of the putative class members. Plaintiffs attempt to cure this failure by offering the testimony and expert report[1] of Geoffrey Miller, a law professor, to explain the law pertaining to standards for class certification and to opine that Plaintiffs meet the requirements for class certification. Professor Miller's testimony and report do not cure Plaintiffs' otherwise deficient evidence for two principal reasons.

---

[1] Geoffrey Miller's report containing his opinions is attached to Plaintiffs' Supplemental Motion for Class Certification as Exhibit "A."

**DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' EXPERT AND BRIEF IN SUPPORT -- Page 1**

Professor Miller cannot recall ever giving testimony in any case that an individual plaintiff was inadequate as a representative, or that an individual plaintiff was not a typical plaintiff. (Ex. B, Miller Depo. at 24-25). Indeed, Professor Miller recalls no case in which he had testified that there was not proper grounds for certification of a class. (Ex. B, Miller Depo. at 175-78).

### 2. Professor Miller's articles raise serious questions regarding the reliability of his opinion.

Not only has Professor Miller never found a plaintiff inadequate, his prior recommendations have taken the contrarian position that class plaintiffs need not possess the adequacy component at all because they are irrelevant. The two articles that Professor Miller has authored on class certification issues that relate to this case are instructive. *See* Jonathon R. Macey & Geoffrey P. Miller, *The Plaintiffs' Attorney's Role in Class Action and Derivative Litigation: Economic Analysis and Recommendations for Reform*, 58 U. CHI. L. REV. 1 (1991) (attached hereto as Ex. C), *reprinted in* FRANKLIN A. GEVURTZ, CORPORATE LAW ANTHOLOGY 186-94 (1997); Geoffrey P. Miller, *Class Actions*, in 1 THE NEW PALGRAVE DICTIONARY OF ECONOMICS AND THE LAW 257-62 (Peter Newman ed., Macmillan Reference Limited 1998) (attached hereto as Ex. D). In these two articles, Professor Miller makes the following observations regarding the realities of class action litigation:

- The named plaintiff has little control over how the suit is conducted (Ex. C, Miller article at 5);

- The named plaintiff does little–indeed, usually does nothing–to monitor the attorney in order to ensure that representation is competent and zealous (Ex. C, Miller article at 5);

- Because class actions are dominated by entrepreneurial attorneys, the identified plaintiff operates almost always as a mere figurehead (Ex. C, Miller article at 5);

- In the class action suit, the attorney's client is not actively involved in the conduct of the litigation on the plaintiff's side (Ex. C, Miller article at 8);

**DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' EXPERT AND BRIEF IN SUPPORT -- Page 9**

- The notion that the representative plaintiff exercises any significant leverage over the plaintiffs' attorney is dubious at best (Ex. C, Miller article at 71);

- The named plaintiff is not equipped to monitor the activities of the plaintiffs' counsel; and any claim that named plaintiffs do monitor counsel in such cases is "purest confabulation" (Ex. C, Miller article at 93);

- Plaintiffs in class actions usually exercise virtually no control over the proceeding (Ex. D, Miller article at 258); and

- In practice, the adequacy requirement means little (Ex. D, Miller article at 259).

In sharp contrast to the PSLRA, Professor Miller has recommended a class action practice that would actually approve of lawyer-driven litigation, proposing:

- that the class certification analysis not focus on the appropriateness of the named plaintiff (Ex. C, Miller article at 5);

- that the ethics rules on solicitation, maintenance, fee-splitting and the appearance of impropriety should be jettisoned in class-action cases (Ex. C, Miller article at 5);

- that actual, identified named plaintiffs not be required in large-scale, small claim litigation (Ex. C, Miller article at 6);

- that a plaintiffs' attorney should be allowed to bring "Jane Doe" complaints on behalf of a class (Ex. C, Miller article at 6);

- that the class representative's testimony should be irrelevant to the fact-finding process (Ex. C, Miller article at 71);

- that there is no reason that repeat plaintiffs should not be allowed (Ex. C, Miller article at 74); and

- that courts should acknowledge forthrightly that the class action plaintiff is a figurehead and should prohibit any inquiry into his intellect, educational achievements, or understanding of the case (Ex. C, Miller article at 93-94).

This radical view runs exactly counter to Rule 23 of the Federal Rules of Civil Procedure and the PSLRA. Unsurprisingly, Professor Miller acknowledged knowing of no court that has accepted his recommendations. (Ex. B, Miller Depo. at 86-90, 98-100, 114-15). Moreover, these recommendations raise serious questions regarding the reliability of his report and testimony in two respects. First, Professor Miller's articles are indicative of his opinions with respect to how the law

on class actions should develop, opinions that stand in direct opposition to the evident and stringent adequacy standards recognized by the Fifth Circuit in *Compaq*. Second, to the extent Professor Miller has tried to distance his current views from those in his prior articles by reciting that they apply only to "large-scale, small-claim" class actions and then arguing that this litigation is not such an action,[4] then he can claim no expertise based on writings pertinent to the issues in this class action. At bottom, either Professor Miller's articles pertain to this action or they do not. In either case, the articles (or the lack of them) pose serious questions regarding the reliability of Professor Miller's opinion.

### 3. Professor Miller's opinions and conclusions are contrary to the Fifth Circuit's opinion in *Compaq*.

Professor Miller's deposition testimony reveals that the adequacy standard he is applying to the plaintiffs in this action is contrary to the adequacy standard established by the Fifth Circuit in *Compaq*. Specifically, under Professor Miller's adequacy standard, D.H. Lee would qualify as a class representative even if he were the only lead plaintiff. (Ex. B, Miller Depo. at 193). Accordingly, the adequacy standard that Professor Miller proposes is met by a Plaintiff who:

- only glanced at the initial petition prepared by his attorneys, did not review it in detail, and did not provide any additional information for inclusion in the pleading;

- did not even sign the shareholder's certification that he was required by law to execute (it was signed by his attorney);

- never even saw, let alone participated in, or supervised the Consolidated Complaint before it was filed;

- since the filing of the lawsuit, has tried to "just forget it and leave it all to the firm, law firm;"

- is simply going to do what his lawyers tell him to do;

- does not recall what complaints he has against the individual Defendants;

---

[4] Professor Miller on numerous occasions attempted to distance himself from his articles by characterizing this litigation as a potentially different kind of action. (Ex. B, Miller Depo. at 25-130).

**DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' EXPERT AND BRIEF IN SUPPORT -- Page 11**

- has no written retention agreement with any of the law firms and has no information on how the attorneys are going to be compensated; and

- has never communicated in any respect with any of the other Plaintiffs, and knows nothing of them, not even their names.

*See* Defendants' Opposition to Plaintiffs' Supplemental Motion for Class Certification, filed September 21, 2001, at 10-11, (hereinafter "Defendants' Opposition") and exhibits cited therein. Clearly, the standard employed by Professor Miller that permits D.H. Lee to be deemed an adequate Plaintiff is contrary to *Compaq's* requirement of an active, able class representative who is informed and can demonstrate that he is directing the litigation. (Ex. B, Miller Depo. at 188-93).

Professor Miller's explanation of *why* D.H. Lee is an adequate class representative is further evidence of Miller's application of the wrong adequacy standard. Specifically, Professor Miller relied on the following items from Lee's deposition testimony as evidence of his adequacy:

- Lee's complaint was the first that was filed against Triton;

- Lee's depiction of "the central nature of the case," for example, is "that there were assets in Malaysia and Thailand that Triton had evaluated as being exceptionally good assets and that turned out not to be so good," and that "something was wrong when the stock loses 30 percent or more of its value in a single day;"

- Lee has had an ongoing relationship with Kirk Patton, whose law firm has provided work on the case;

- Lee has participated in consulting with counsel, has been on telephone calls with counsel, and understands that he may be required to advance expenses of the litigation;

- Lee signed a declaration that was of assistance to the class in maintaining venue in Texarkana; and

- Lee resides in Texarkana.

(Ex. B, Miller Depo. at 188-192.)

The majority of the items listed by Professor Miller in support of Lee's adequacy have nothing to do with the adequacy standard adopted in *Compaq*. Moreover, the two items listed by

Professor Miller in support of Lee's adequacy that even bear on an analysis under *Compaq*--Lee's alleged participation in the case and his purported understanding of the allegations--find no support in Lee's deposition testimony. As set forth above, Lee's testimony establishes the opposite of an active, able class representative who demonstrates it is he who directs the litigation. *See Compaq*, 257 F.3d at 483. Lee revealed his ignorance of what a class action lawsuit is, what complaints he has against the individual Defendants, and that he has turned this lawsuit over completely to the lawyers. *See* Defendants' Opposition at 10-11. *Compaq* requires more, namely, a class representative who possesses a sufficient level of knowledge and understanding, not derived solely from counsel, to be capable of "controlling" or "prosecuting" the litigation. *Compaq*, 257 F.3d at 482-483 & n.18. Given that under Professor Miller's standard, Lee is adequate, the application of Miller's standard to the other remaining Plaintiffs is likewise improper.

Unsurprisingly, the inconsistency between the adequacy standard applied by Professor Miller and the standard established in *Compaq* is further demonstrated by his willingness to approve the seven remaining plaintiffs in this action as a group. Whereas *Compaq* and other courts have expressed concerns regarding the appointment as lead plaintiff of a group of persons who were previously unaffiliated, *see Compaq*, 257 F.3d at 478 n.2 and cases cited therein, Professor Miller testified that pre-litigation relatedness not only is not necessarily a positive factor but it actually could be a negative factor. (Ex. B, Miller Depo. at 202-204). The same bias was exemplified by Professor Miller's testimony that the Plaintiffs' failure to confer a single time until nearly three years into this action was acceptable. *Id.* at 285-90. He proclaimed that was so because discovery was stayed during this period and because there was nothing for them to do. *Id.* This is directly against *Compaq*, which requires a lead plaintiff to "take an active role in and control the litigation," *see* 257 F.3d at 479, and which does not set forth any exceptions authorizing a lack of client control during any stage of the litigation. Indeed, Professor Miller's interpretation of *Compaq* would allow

the lawyers to conduct pre-discovery investigation of the allegations in the complaint without any client involvement, a proposition contrary to *Compaq's* requirement that plaintiffs' understanding of the action should not be limited to derivative knowledge acquired solely from counsel. *Id.* at 483 n.18. *See also* Defendants' Opposition at 15-20 and Sur-Reply at 7-11.

## III.
## CONCLUSION

As set forth above, Professor Geoffrey Miller's report and testimony consists of inadmissible expert opinion regarding pure questions of law and legal conclusions. Moreover, the opinions and conclusions in Professor Miller's report and testimony are neither reliable nor relevant as required by *Daubert* and its progeny. Accordingly, Professor Miller's report must be stricken and his testimony excluded. The harm and prejudice caused by the improper report and testimony can only be avoided by excluding such evidence.

First, Professor Miller's opinions amount to inadmissible legal conclusions in direct contravention of the Federal Rules of Evidence and an overwhelming body of federal case law. In essence, Plaintiffs propose that their expert tell this Court what the law is and opine on the ultimate issue to be decided by the Court – namely, whether the group of remaining Plaintiffs may represent a class under applicable federal law.

Second, Professor Miller's opinions fail to satisfy the minimum standards for expert testimony under the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny. Specifically, Professor Miller's opinions regarding the requirements for class certification are inconsistent with the Private Securities Litigation Reform Act (the "PSLRA" or "Reform Act") and *Berger v. Compaq Computer Corporation*, 257 F.3d 475 (5th Cir. 2001), delineating standards for class representation in securities litigation.[2]

For these reasons, Miller's testimony and report should be excluded.

## II.
## ARGUMENT AND AUTHORITIES

A. **Federal Law Excludes Expert Opinion Regarding a Pure Question of Law and Legal Conclusions.**

Miller's opinions as to whether Plaintiffs meet the legal requirements necessary for class certification are clearly improper and inadmissible under the Federal Rules of Evidence. Historically, the standard objection to such opinion testimony was that it involved the "ultimate issue" in the case. While Rule 704 changed the applicable law to provide that an opinion involving the ultimate issue is not *per se* objectionable, it is clear that Rule 704 does not open the door to all opinions.

---

[2] Because Professor Miller's report and testimony apply the incorrect standard for determining the appropriateness of this action and these Plaintiffs for class certification, the Defendants have designated Professor Jack Ratliff in rebuttal to provide an expert report and testimony regarding the correct standard. In the event that the Court enters an order precluding Miller's improper report and testimony, Professor Ratliff's report and testimony will be unnecessary.

**DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' EXPERT AND BRIEF IN SUPPORT – Page 2**

The advisory committee's note to Rule 704 of the Federal Rules of Evidence states:

> The abolition of the ultimate issue Rule does not lower the bar so as to admit all opinions. Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the [trier of fact] what result to reach, somewhat in the manner of the oath helpers of an earlier day.

FED. R. EVID. 704 advisory committee's note. Contrary to the advisory committee's note, Plaintiffs' proffer Professor Miller to tell this Court what the law is and how to make the certification decision based on his selection of the evidence. Such testimony fails to assist the trier of fact as required by Federal Rule of Evidence 702, and attempts to invade the province of the court as to legal questions.

1. **Numerous federal courts of appeal have held that experts may not testify as to their opinions on pure questions of law.** When reviewing a trial court decision that allowed a plaintiff's expert to opine that municipal employees had been illegally hired in a wrongful termination action, the First Circuit declared "[i]n our legal system, purely legal questions ... [are] exclusively the domain of the judge." *See Nieves-Villanueva v. Soto-Riveria*, 133 F.3d 92, 99 (1st Cir. 1997). Expert testimony consisting of legal conclusions cannot properly assist the trier of fact because the judge's expert knowledge of the law makes any such assistance at best cumulative, and at worst prejudicial. *Id.* at 100 (stating "each courtroom comes equipped with a 'legal expert,' called a judge....") (citing *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207 (D.C. Cir. 1997)). In *Nieves-Villanueva,* the First Circuit also noted that at least seven circuit courts have held that the Federal Rules of Evidence prohibit expert testimony instructing the trier of fact as to applicable principles of law. *Id.* at 99 (citing *Burkhart*, 112 F.3d at 1212-14); *Snap-Drape, Inc. v. Commissioner*, 98 F.3d 194, 197-98 (5th Cir. 1996) (trial court properly excluded taxpayer's expert reports as nothing more than legal arguments concerning the tax treatment of certain dividends); *Berry v. City of Detroit*, 25 F.3d 1342, 1353-54 (6th Cir. 1994) (finding inadmissible the comments

of an expert in police practices on the meaning of the legal term "deliberate indifference" in a civil rights case); *Aguilar v. International Longshoremen's Union, Local # 10*, 966 F.2d 443, 447 (9th Cir. 1992) (testimony of purported expert that workers reasonably and foreseeably relied on defendants' promises addressed matters of law for the court's determination that were inappropriate subjects for expert testimony); *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988) (en banc) (reversible error to allow an expert witness who was an attorney to give his opinions on what was required to make consent to a search effective); *Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 366 (4th Cir. 1986) (finding inadmissible proffered expert opinion concerning whether, under securities laws, disclosure of a particular fact was required in the course of negotiating a transaction); *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 508-09 (2d Cir. 1977) (securities lawyer, called as an expert, could not testify to the legal obligations created under a contract).

2.  **Federal courts also hold that expert witnesses may not offer opinions that reach legal conclusions.** For example, in *Ake v. General Motors Corp.*, 942 F. Supp. 869, 877 (W.D.N.Y. 1996) (citing *In re Air Disaster at Lockerbie Scotland on December 21, 1988*, 37 F.3d 804, 826-27 (2d Cir. 1994)) the court stated, "[i]t is clear that expert testimony expressing a legal conclusion is not admissible, because such testimony would intrude on the trial court's function." Similarly, in an action involving alleged violations of the Age Discrimination in Employment Act and the Employee Retirement Income Security Act, a New Jersey federal district court disallowed the testimony of a certified public accountant who stated that segregation of salaried plan assets violated the exclusive benefit rule, stating "legal conclusions are not within the ambit of expert testimony permitted under Rule 703 of the Federal Rules of Evidence." *Lynch v. J.P. Stevens & Co., Inc.*, 758 F. Supp. 976, 1014 (D. N.J. 1991). Affirming a district court ruling excluding expert testimony that "attempt[ed] to tell the [trier of fact] which result to reach...", the Sixth Circuit referenced the advisory committee's note to Rule 704 and declared "it is, therefore, apparent that testimony

offering nothing more than a legal conclusion-- *i.e.*, testimony that does little more than tell the [trier of fact] which result to reach-- is properly excluded under the Rules." *Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997).

An expert's testimony that contains a legal conclusion conveys the witness' unexpressed and, perhaps erroneous, legal standard to the trier of fact. The Fifth Circuit has stated "it must be posited as an a priori assumption [that] there is one, but only one, legal answer for every cognizable dispute. There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge." *Askanase v. Fatjo*, 130 F.3d 657, 672 (5th Cir. 1997) (citing *Specht*, 853 F.2d at 807). Accordingly, Professor Miller may not properly act as the spokesman of the law with respect to class certification, a role that has been explicitly and solely reserved for the Court under applicable federal law and has been addressed by the parties in their briefs.

The Tenth Circuit in *Specht* addressed an analogous situation in which an attorney was called by the plaintiffs as an expert witness to testify regarding the legality or illegality of a search of the plaintiffs' home and business. *Specht*, 853 F.2d at 806. Over the objection of defense counsel, the trial court had permitted the expert to testify at length regarding his opinion that the searches had been conducted illegally. The admissibility of the expert's testimony was the sole issue considered by the *Specht* court. Its decision found reversible error in the contravention of Federal Rule of Evidence 704, and the subsequent advisory committee's notes:

> while testimony on ultimate facts is authorized by Rule 704, the committee's comments emphasize that testimony on ultimate questions of law is not favored. The basis for this distinction is that testimony on the ultimate fact questions aids the [trier of fact] in reaching a verdict; testimony which articulates and applies the relevant law, however, circumvents the [trier of fact's] decision-making function by telling it how to decide the case.

*Id.* at 808.

As in *Specht*, Plaintiffs in this action are offering expert testimony that attempts to interpret the law and to instruct the Court on the issue of whether this group of Plaintiffs has satisfied the requirements for representing a class under federal law. The federal rules of evidence, and a substantial body of case law, explicitly rejects such testimony as impermissible. *See Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983); *United States v. Baskes*, 649 F.2d 471, 479 (7th Cir. 1980) (Rule 704 generally does not allow witnesses' opinions as to the "legal implications of conduct"). Plainly, admitting Professor Miller's testimony contravenes federal law, and poses the risk of confusion, unfair prejudice, and cumulative argument.

**B.     Professor Miller's Opinions and Conclusions Fail to Satisfy the Minimum Standards for Expert Testimony Under *Daubert* And Are Based on an Incorrect Legal Standard.**

Professor Miller's opinions regarding the legal requirements for class certification, and his conclusions regarding the propriety of this case for certification, fail to satisfy the minimum standards for expert testimony under *Daubert* and its progeny and are inconsistent with the PSLRA and *Compaq*.

### Standards for Admissibility of Expert Testimony

As a threshold matter, expert testimony must satisfy the requirements of Federal Rule of Evidence 702. Effective December 1, 2000, Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702. This recent amendment of Rule 702 codifies the principles set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See* FED. R. EVID. 702 advisory committee's note (2000). In *Daubert*, the United States Supreme Court charged trial judges to act as "gatekeepers" to "ensure that any and all scientific testimony...is not only relevant, but reliable."

509 U.S. at 589. This "gate-keeping" obligation on the part of the district court applies to all types of expert testimony, not just scientific. *See Kumho Tire Co. v. Carmichael*, 119 S. Ct. 1167, 1174 (1999)). In screening expert testimony, the district court's "gatekeeper" duty is two-fold.

First, the district court must determine whether the proffered "expert" testimony is **reliable** by assessing whether the reasoning or methodology underlying the testimony is valid. *Daubert*, 509 U.S. at 592-93. Specifically, the expert's testimony must be more than unsupported speculation or subjective belief. *Id.* at 590.

Second, the district court must determine whether that reasoning or methodology can be properly applied to the facts in issue--whether the purported expert testimony is **relevant**. *Daubert*, 509 U.S. at 590.

The opinion also must assist the trier of fact. Proposed testimony does not assist where the fact finder has no need for an opinion because it easily can be derived from common sense, common experience, the fact finder's own perceptions or just simple logic. *See, e.g., Beech Aircraft Corp. v. U.S.*, 51 F.3d 834, 842 (9th Cir. 1995); *Pelster v. Ray*, 987 F.2d 514, 526 (8th Cir. 1993); *see also* Wright & Gold, 29 Federal Practice and Procedure: Evidence § 6264.

As the proponent of Professor Miller's testimony, Plaintiffs bear the burden to establish the qualifications of their expert and the admissibility of his evidence. *Daubert*, 509 U.S. at 592, n. 10 (citing *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987)).

### Fifth Circuit Standard for Certification in Securities Cases

The Fifth Circuit recently recognized that the PSLRA "raises the standard" for proposed class representatives in securities litigation. *Compaq*, 257 F.3d at 481-483. The Reform Act imposes an additional requirement on Plaintiffs to show that the suit is "managed by active, able class representatives who are informed and can demonstrate that they are directing the litigation." *Id.* The heightened adequacy standard reflects the governing principles of the PSLRA and,



IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| In Re: | § § | |
| Triton Energy Limited Securities Litigation | § § § | Civil Action No. 598CV256 |

### EXHIBITS IN SUPPORT OF
### DEFENDANTS' OBJECTIONS TO AND MOTION TO STRIKE
### PLAINTIFFS' EXPERT AND BRIEF IN SUPPORT

Noel M. B. Hensley
State Bar No. 09491400
HAYNES AND BOONE, LLP
901 Main Street, Suite 3100
Dallas, Texas 75202
Tel:   (214) 651-5000
Fax:   (214) 651-5940
ATTORNEY-IN-CHARGE

Nicholas H. Patton
State Bar No. 15631000
PATTON & TIDWELL, LLP
4605 Texas Boulevard
Texarkana, Texas 75503
Tel:   (903) 792-7080
Fax:   (903) 792-8233
LOCAL COUNSEL

ATTORNEYS FOR DEFENDANTS
TRITON ENERGY LIMITED
AND PETER RUGG

Rodney Acker
State Bar No. 00830700
JENKENS & GILCHRIST
3200 Fountain Place
1445 Ross Avenue
Dallas, Texas 75202
Tel:   (214) 855-4500
Fax:   (214) 855-4300

ATTORNEYS FOR DEFENDANT
THOMAS G. FINCK

DATED: October 15, 2001



D-949101.1

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| In Re: | § § | |
| Triton Energy Limited Securities Litigation | § § § | Civil Action No. 598CV256 |

**EXHIBITS IN SUPPORT OF DEFENDANTS'
OBJECTIONS TO AND MOTION TO STRIKE
PLAINTIFFS' EXPERT AND BRIEF IN SUPPORT**

| Exhibit Tab | Description |
|---|---|
| A | Order Granting Defendants' Motion to Preclude Testimony of Geoffrey P. Miller, entered in *Thurmond v. Compaq Computer Corporation*, No. 1:99CV00711 (E.D. Tex., Beaumont Division). |
| B | Excerpts from Deposition of Professor Geoffrey P. Miller. |
| C | Jonathon R. Macey & Geoffrey P. Miller, *The Plaintiffs' Attorney's Role in Class Action and Derivative Litigation: Economic Analysis and Recommendations for Reform*, 58 U. CHI. L. REV. 1 (1991). |
| D | Geoffrey P. Miller, *Class Actions*, in 1 THE NEW PALGRAVE DICTIONARY OF ECONOMICS AND THE LAW 257-62 (Peter Newman ed., Macmillan Reference Limited 1998). |

D-949101.1

"particularly, Congress's emphatic command that competent plaintiffs, rather than lawyers, direct such cases." *Id.* at 484. In other words, "[c]lass action lawsuits are intended to serve as a vehicle for capable, committed advocates to pursue the goals of the class members through counsel, not for capable, committed counsel to pursue their own goals through those class members." *Id.*

As set forth below, Professor Miller's report and testimony in this action are neither reliable nor relevant as required by *Daubert* and its progeny and are inconsistent with the PSLRA and *Compaq*.

### 1. Professor Miller has limited experience with respect to the standards for certifying federal securities class actions and has a general bias in favor of certifying class plaintiffs.

The Defendants do not dispute Professor Miller's scholarly background with respect to certain issues pertaining to the law of class actions. Nevertheless, Professor Miller's deposition testimony reveals that he has limited experience with respect to federal securities class actions, and has a general bias against requiring anything of class plaintiffs.

Of the cases in which Professor Miller has testified as an expert, none of his appearances has dealt with the adequacy of individual plaintiffs in a securities fraud class action. (Ex. B, Miller Depo. at 146-47). Indeed, Professor Miller testified that "I believe I have never, as an expert witness until today, given a direct opinion on the question of the adequacy of the named plaintiff in a securities fraud case." *Id.* Moreover, of the three federal cases where Professor Miller has testified regarding class actions, two of them were in uncontested settlement fairness hearings, and in the third his testimony on class certification issues was stricken by the Court. (Ex. B, Miller Depo. at 167-74).[3]

---

[3] Professor Miller's testimony was recently precluded in *Thurmond v. Compaq Computer Corporation*, No. 1:99CV00711, a class action pending in Judge Heartfield's Court in the Beaumont Division of the Eastern District of Texas. (Ex. A, *Thurmond* order on motion to strike, at 1).

DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' EXPERT AND BRIEF IN SUPPORT -- Page 8